FILED
SEP - 9 2026
Clerk, U.S. District Court
Texas Eastern

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff, | §<br>§ | |
| v. | § | No. 4:26-CR 230 |
| | § | Judge SDJ/AGD |
| LUIS SAUL PAEZ NIETO<br>a/k/a Jose Daniel Gonzales Tapia,<br>Defendant. | §<br>§ | |

**INDICTMENT**

THE UNITED STATES GRAND JURY CHARGES:

**INTRODUCTION**

At all times relevant to this Indictment:

**Tren de Aragua ("TdA")**

1. Tren de Aragua ("TdA") is a violent transnational criminal organization that originated as a prison gang in Venezuela in the mid-2000s. TdA has expanded its criminal network throughout the Western Hemisphere and established a presence in the United States, including but not limited to Colorado, Florida, Illinois, New Mexico, New York, Nebraska, Texas, Utah, and Washington, as well as internationally in countries including but not limited to Venezuela, Colombia, Peru, Chile, Brazil, Mexico, and Spain. As a result, TdA operated as a national and international criminal organization with its members and associates regularly conducting gang activities and acts of terrorism across the Western Hemisphere and elsewhere.

2. TdA—literally meaning "Train from Aragua"—originated in the Venezuelan

state of Aragua in the 2000s, and TdA used the Tocorón Prison in Aragua as a center of operations to orchestrate and conduct criminal activities. TdA was largely composed of persons from South America, mostly from Venezuela. In the following years, gang members and associates left Venezuela and spread throughout North, South, and Central America, and other places, which expanded TdA's presence.

3. TdA members and associates established a presence in other countries in South America, Central America, and the United States by engaging in the following pattern of behavior: First, TdA members and associates infiltrated South American countries by crossing their borders and finding cities and residential neighborhoods where they could establish control over civilian immigrant populations. Next, TdA members and associates committed crimes and other acts of terrorism to assert control over their territory and enrich themselves and the organization through extortions, kidnappings, robberies, murders, drug trafficking, prostitution, sex trafficking, and trafficking of firearms, grenades, ammunition, and gold. TdA also formed ties with other transnational criminal organizations operating in the Western Hemisphere and, at times, collaborated with other criminal groups and organizations, transnational or otherwise, on a local and ad hoc basis. Eventually, TdA members and associates migrated from South America to other locations, including the United States, where they used the same violent tactics and criminal techniques to form cells in cities across the country. While those local cells often had their own individual hierarchies, they were still connected to the leaders in South America who required that the cells in the United States send a portion of their proceeds from criminal activities to the

leaders in South America. This fee paid to TdA leaders was referred to as a "causa" and was collected from lower-level TdA members who had permission to work in TdA's areas of control. These payments enriched TdA leadership, provided financial support to TdA leaders, and resourced and furthered TdA's criminal activities. Individuals who did not pay the "causa" would be threatened, beaten, or murdered by TdA members.

4. TdA developed revenue sources and income streams through criminal activities such as drug trafficking, illegal gold mining, firearms trafficking, human smuggling, sex trafficking, kidnapping, robbery, theft, fraud, ATM jackpotting, and extortion. Throughout North, Central, South America, and other countries, TdA members and associates laundered the proceeds of their criminal activities, including through cryptocurrency and digital payment networks, to transmit the required portion of their criminal proceeds (the causa) to TdA leadership in South America.

5. In the United States, TdA was organized by geographic areas of operation into subsets, or cells. Many of the crimes and acts of terrorism committed by TdA members and associates in the United States and elsewhere were ordered, directed, facilitated, or otherwise supported by TDA leadership in South America. Each regional cell typically had one or more leaders who were responsible for, among other things, managing the criminal enterprise's activities in the territory, collecting money from other members and associates to finance activities and crimes, directing day to day management of the region, planning and ordering acts of violence against rival gang members, associates, and other victims. The leaders of these subsets or cells reported to, received directives from, and distributed

assets and criminal proceeds to TdA leaders throughout the United States, Colombia, Venezuela, Mexico, and other countries in Central and South America.

6. LUIS SAUL PAEZ NIETO, a/k/a "Jose Daniel Gonzales Tapia," (PAEZ NIETO) was a member and associate of TdA who oversaw and participated in unlawful activities in furtherance of TdA's affairs. For years through to the present, PAEZ NIETO was a trusted command-and-control facilitator of TdA leaders and cells in Peru, Chile, Colombia, and Venezuela and was integral in aiding TdA's expansion across the Western Hemisphere and in the United States. During much of that time, PAEZ NIETO orchestrated TdA criminal activities from in or around Peru, Colombia, and elsewhere in South America, where he participated in and directed day-to-day TdA operations, including but not limited to coordinating communications, logistics, and financial activities between senior TdA leaders and regional criminal networks engaged in a wide range of crimes, including but not limited to drug trafficking, firearms trafficking, extortions, robberies, kidnappings, and money laundering.

7. Through his trusted access to senior TdA leaders and his placement over subordinate operatives and facilitators, PAEZ NIETO controlled and directed the drug trafficking and money laundering activities of TdA operatives across multiple jurisdictions, including a Peruvian-based sect of TdA, which transported illegal narcotics from within South America to the United States and other countries, including to the State of Texas, where the narcotics were subsequently distributed and sold. PAEZ NIETO, in coordination and communication with TdA leaders, as well as subordinate operatives and facilitators,

collected, remitted, and dispersed revenue from the sale of illegal narcotics and other criminal activities in the United States and elsewhere to enrich himself and other TdA leaders and associates. PAEZ NIETO, in coordination and communication with TdA leaders, as well as subordinate operatives and facilitators, used various global fiat currencies, cryptocurrency, digital payment networks, and bank accounts, to enable multiple TdA associates to transfer criminal proceeds from, to, and through places in multiple countries, including the United States, for the purpose of concealing and disguising the nature, location, source ownership, and control of the proceeds of TdA's unlawful criminal activities, and to resource and further TdA's criminal activities in the United States and elsewhere.

8. On February 20, 2025, the United States Secretary of State designated TdA as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act. On February 20, 2025, the Secretary of State also designated TdA as a Specially Designated Global Terrorist under Executive Order 13224. On July 11, 2024, TdA was designated by U.S. Department of the Treasury as a transnational criminal organization under Executive Order 13581. The Secretary of State has also listed "Aragua Train" as an alias for TdA. To date, Tren de Aragua remains a designated FTO.

## **Count One**

Violation: 18 U.S.C. § 2339B (Conspiracy to Provide Material Support and Resources to a Foreign Terrorist Organization)

9. The allegations in paragraphs 1 through 8 of this Indictment are hereby re-alleged and incorporated by reference as if set forth fully herein.

10. From on or about February 20, 2025, and continuously thereafter up to and including the date of this Indictment, in an offense begun and committed outside the jurisdiction of any particular State or District of the United States, including Colombia, Peru, Chile, Mexico, Spain, Venezuela, and elsewhere and within the extraterritorial jurisdiction of the United States of America, the defendant,

**LUIS SAUL PAEZ NIETO,**
**a/k/a Jose Daniel Gonzales Tapia,**

who will first be brought to and arrested in the Eastern District of Texas, did conspire with other persons known and unknown to the Grand Jury to knowingly provide "material support or resources," as that term is defined in Title 18, United States Code, Section 2339A(b), namely services, property, and personnel (including himself), to a foreign terrorist organization, namely TdA, which at all relevant times was designated by the United States Secretary of State as a foreign terrorist organization pursuant to Section 219 of the Immigration and Nationality Act, knowing that TdA was a designated foreign terrorist organization, and that TdA has engaged in terrorist activity, and that TdA has engaged in terrorism.

All in violation of 18 U.S.C. §§ 2339B and 3238.

**Count Two**

Violation: 18 U.S.C. § 2339B (Providing and Attempting to Provide Material Support and Resources to a Foreign Terrorist

Organization, Aiding and Abetting)

11. From on or about February 20, 2025, and continuously thereafter up to and including the date of this Indictment, in an offense begun and committed outside the jurisdiction of any particular State or District of the United States, including Colombia, Peru, Chile, Mexico, Spain, Venezuela, and elsewhere and within the extraterritorial jurisdiction of the United States of America, the defendant,

**LUIS SAUL PAEZ NIETO,**
**a/k/a Jose Daniel Gonzales Tapia,**

who will first be brought to and arrested in the Eastern District of Texas, did knowingly provide and attempt to provide "material support or resources," as that term is defined in Title 18, United States Code, Section 2339A(b), namely services, property, and personnel (including himself), to a foreign terrorist organization, namely TdA, which at all relevant times was designated by the United States Secretary of State as a foreign terrorist organization pursuant to Section 219 of the Immigration and Nationality Act, knowing that TdA was a designated foreign terrorist organization, and that TdA has engaged in terrorist activity, and that TdA has engaged in terrorism.

In violation of 18 U.S.C. §§ 2339B, 3238, and 2.

**Count Three**

Violation: 21 U.S.C. § 963 (Conspiracy to Manufacture and Distribute Cocaine Intending, Knowing, and with Reasonable Cause to Believe that the Cocaine will be Unlawfully Imported into the United States)

12. That sometime in or around 2022, and continuously thereafter up to and including the date of this Indictment, in an offense begun and committed outside the jurisdiction of any particular State or District of the United States, including Colombia, Peru, Chile, Mexico, Spain, Venezuela, and elsewhere and within the extraterritorial jurisdiction of the United States of America, the defendant,

**LUIS SAUL PAEZ NIETO,**
**a/k/a Jose Daniel Gonzales Tapia,**

who will first be brought to and arrested in the Eastern District of Texas, did knowingly and intentionally combine, conspire, and agree with other persons known and unknown to the United States Grand Jury, to knowingly and intentionally manufacture and distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, intending, knowing, and having reasonable cause to believe that such substance would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a) and 960.

In violation of 21 U.S.C. § 963 and 18 U.S.C. § 3238.

**Count Four**

Violation: 21 U.S.C. § 959 and 18 U.S.C. § 2 (Manufacturing and Distributing Five Kilograms or More of Cocaine Intending, Knowing and with Reasonable Cause to Believe that the Cocaine will be Unlawfully Imported into the United States, Aiding and Abetting)

13. That sometime in or around 2022, and continuously thereafter up to and including the date of this Indictment, in an offense begun and committed outside the

jurisdiction of any particular State or District of the United States, including Colombia, Peru, Chile, Mexico, Spain, Venezuela, and elsewhere and within the extraterritorial jurisdiction of the United States of America, the defendant,

**LUIS SAUL PAEZ NIETO,**
**a/k/a Jose Daniel Gonzales Tapia,**

who will first be brought to and arrested in the Eastern District of Texas, did knowingly and intentionally manufacture and distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, intending, knowing, and having reasonable cause to believe that such cocaine would be unlawfully imported into the United States.

In violation of 21 U.S.C. § 959 and 18 U.S.C. §§ 3238 and 2.

**Count Five**

Violation: 21 U.S.C. § 846 (Conspiracy to Distribute Controlled Substances)

14. That sometime in or around 2022, and continuously thereafter up to and including the date of this Indictment, in an offense begun and committed outside the jurisdiction of any particular State or District of the United States, including Colombia, Peru, Chile, Mexico, Spain, Venezuela, and elsewhere and within the extraterritorial jurisdiction of the United States of America, the defendant,

**LUIS SAUL PAEZ NIETO,**
**a/k/a Jose Daniel Gonzales Tapia,**

who will first be brought to and arrested in the Eastern District of Texas, did knowingly and intentionally combine, conspire, confederate, and agree with other persons known and

unknown to the Grand Jury, to distribute and possess with the intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

15. The controlled substances involved in the offense were (i) mixtures and substances containing a detectable amount of ketamine, a Schedule III controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(E); and (ii) 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(A).

In violation of 21 U.S.C. § 846 and 18 U.S.C. § 3238.

**Count Six**

Violation: 21 U.S.C. § 841 and 18 U.S.C. § 2 (Possession with Intent to Distribute and Distribution Controlled Substances, Aiding and Abetting)

16. That sometime in or around 2022, and continuously thereafter up to and including the date of this Indictment, in an offense begun and committed outside the jurisdiction of any particular State or District of the United States, including Colombia, Peru, Chile, Mexico, Spain, Venezuela, and elsewhere and within the extraterritorial jurisdiction of the United States of America, the defendant,

**LUIS SAUL PAEZ NIETO,**
**a/k/a Jose Daniel Gonzales Tapia,**

who will first be brought to and arrested in the Eastern District of Texas, did knowingly and intentionally distribute and possess with intent to distribute a controlled substance, in

violation of Title 21, United States Code, Section 841(a)(1).

17. The controlled substances involved in the offense were (i) mixtures and substances containing a detectable amount of ketamine, a Schedule III controlled substance, in violation of Title 21, United States Code, Sections 841(b)(1)(E); and (ii) 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(A).

In violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(E), and 18 U.S.C. §§ 3238 and 2.

**Count Seven**

Violation: 18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering)

18. The allegations in paragraphs 1 through 8 of this Indictment are hereby re-alleged and incorporated by reference as if set forth fully herein.

19. That sometime in or around 2022, and continuously thereafter up to and including the date of this Indictment, in an offense begun and committed outside the jurisdiction of any particular State or District of the United States, including Colombia, Peru, Chile, Mexico, Spain, Venezuela, and elsewhere and within the extraterritorial jurisdiction of the United States of America, the defendant,

**LUIS SAUL PAEZ NIETO,**
**a/k/a Jose Daniel Gonzales Tapia,**

who will first be brought to and arrested in the Eastern District of Texas, did knowingly

combine, conspire, and agree with others known and unknown to the Grand Jury to commit certain offenses under Title 18, United States Code, Section 1956, namely:

(a) transporting, transmitting, and transferring, and attempting to transport, transmit and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, namely, importation, receipt, sale, and otherwise dealing in narcotics or other dangerous drugs, as defined in Title 21, United States Code, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

(b) transporting, transmitting, and transferring, and attempting to transport, transmit, and transfer a monetary instrument or funds involving the proceeds of specified unlawful activity, namely, importation, receipt, sale, and otherwise dealing in narcotic or other dangerous drugs, as defined in Title 21, United States Code, from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States, knowing that the funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

## MANNER AND MEANS

20. It was part of the conspiracy that members and associates participating in the

conduct and affairs of TdA would and did manufacture, distribute, and possess with intent to distribute controlled substances, including cocaine, methamphetamine, ketamine, and a mixed substance called "Tusi" that contained ketamine and other controlled substances.

21. It was further part of the conspiracy that members and associates participating in the conduct and affairs of TdA would and did generate revenue streams and income from the manufacture, distribution, and possession with intent to distribute the controlled substances as described in paragraph 20, above.

22. It was further part of the conspiracy that members and associates participating in the conduct and affairs of TdA would and did conspire, attempt, commit, threaten to commit, and aid and abet acts of violence and terrorism, including murder, kidnapping, assault, extortion, and robbery, to protect and expand TdA's criminal operations, to resolve disputes within TdA, to retaliate against rival organizations, and to generate revenue streams and income from their criminal activities.

23. It was further part of the conspiracy that PAEZ NIETO would and did serve as a trusted facilitator for TdA leaders and coordinate communications, logistics, and financial transactions between senior TdA leaders and regional criminal associates for the purpose of transferring, remitting, and dispersing revenue and income to TdA leaders and other associates, which proceeds were derived from the sale of illegal narcotics and other criminal activities in the United States and elsewhere.

24. It was further part of the conspiracy that PAEZ NIETO and members and associates participating in the conduct and affairs of TdA would and did direct other members and associates to transport, transmit, and transfer monetary instruments and funds

from places in the United States to and through places outside the United States, and to places in the United States from and through places outside the United States, with the intent to promote, resource, and further the carrying on of TdA's criminal activities in the United States and elsewhere.

25. It was further part of the conspiracy that PAEZ NIETO and members and associates participating in the conduct and affairs of TdA would and did direct other members and associates to transport, transmit, and transfer monetary instruments and funds from places in the United States to and through places outside the United States, and to places in the United States from and through places outside the United States, knowing that the funds involved represented the proceeds of some form of unlawful activity, for the purpose of concealing and disguising the nature, location, source, ownership, and control of the proceeds of TdA's sale of illegal narcotics and other criminal activities.

26. It was further part of the conspiracy that PAEZ NIETO and other members and associates participating in the conduct and affairs of TdA would and did utilize various global fiat currencies, cryptocurrency, digital payment networks and platforms, bank accounts, and individuals to transfer, remit, and disperse proceeds of criminal activities to leaders, members, and associates of TdA, both from places in the United States to and through places outside the United States, and to places in the United States from and through places outside the United States, in order to conceal and disguise the nature, location, source, ownership, and control of the proceeds of criminal activity, and to resource and further TdA's criminal activities in the United States and elsewhere.

All in violation of 18 U.S.C. §§ 1956(h) and 3238.

**NOTICE OF INTENTION TO SEEK CRIMINAL FORFEITURE**

27. The allegations in paragraphs 1 through 8 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture.

28. From his engagement in the violations alleged in Counts One and Two of this Indictment, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and (G), and 28 U.S.C. § 2461(c), all of his interest in:

a. Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation or a conspiracy to commit such violation; and
b. All assets, foreign or domestic (i) of any individual, entity, or organization engaged in planning or perpetrating any Federal crime of terrorism against the United States or United States citizens or their property and all assets, foreign and domestic, affording any person a source of influence over any such entity or organization; (ii) acquired or maintained by any person with the intent and for the purpose of supporting, planning, conducting, or concealing any Federal crime of terrorism against the United States or United States citizens or their property; (iii) derived from, involved in, or used or intended to be used to commit any Federal crime of terrorism against the United States or United States citizens or their property; and (iv) of any individual, entity, or organization engaged in planning or perpetrating any act of international terrorism against any international organization or against any foreign government.

29. From his engagement in the violations alleged in Counts Three, Four, Five, and Six of this Indictment, the defendant shall forfeit to the United States, pursuant to 21 U.S.C. §§ 970 and 21 U.S.C. §§ 853(a)(1) and (2), all of his interest in:

a. Any property, real or personal, constituting and derived from any proceeds the defendant obtained, directly or indirectly, as the result of such violation; and
b. Any property, real or personal, used and intended to be used in any manner or part to commit or to facilitate the commission of such violation.

30. From his engagement in the violation alleged in Count Seven of this Indictment, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), all of his interest in:

a. Any property, real or personal, involved in such offense; and
b. Any property traceable to such property.

31. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;
b. has been transferred or sold to, or deposited with, a third person;
c. has been placed beyond the jurisdiction of the court;
d. has been substantially diminished in value; or
e. has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), and as incorporated by 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(b)(1).

A TRUE BILL,

SD.

GRAND JURY FOREPERSON

JAY R. COMBS
UNITED STATES ATTORNEY

MATTHEW JOHNSON
Assistant United States Attorney

Date 9/9/26

JOSEPHINE W. THOMAS
Joint Task Force Vulcan
U.S. Department of Justice

9-9-2026
Date

JASON M. HARLEY
Joint Task Force Vulcan
U.S. Department of Justice

9-9-2026
Date

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 4:26CR |
| | § | Judge |
| LUIS SAUL PAEZ NIETO | § | |
| a.k.a. Jose Daniel Gonzales Tapia | § | |

## NOTICE OF PENALTY

### Counts One and Two

Violation: 18 U.S.C. § 2339B

Penalty: Imprisonment up to twenty (20) years, a fine not to exceed $250,000.00 or twice the gross pecuniary gain from the offense, whichever is greater, or both. A term of supervised release of any term of years up to life.

Special Assessment: $100.00

### Count Three

Violation: 21 U.S.C. § 963

Penalty: Imprisonment for not less than ten (10) years up to life, a fine not to exceed $10,000,000.00, or both. A term of supervised release of at least five (5) years up to life.

Special Assessment: $100.00

### Count Four

Violation: 21 U.S.C. § 959

Penalty: Imprisonment for not less than ten (10) years up to life, a fine not to exceed $10,000,000.00 or both. A term of supervised release of at least five (5) years up to life.

Special Assessment: $100.00

**Count Five**

Violation: 21 U.S.C. § 846

Penalty: Imprisonment for not less than ten (10) years up to life, a fine not to exceed $10,000,000.00, or both. A term of supervised release of at least five (5) years up to life.

Special Assessment: $100.00

**Count Six**

Violation: 21 U.S.C. § 841(a)(1)

Penalty: Imprisonment for not less than ten (10) years up to life, a fine not to exceed $10,000,000.00, or both. A term of supervised release of at least five (5) years up to life.

Special Assessment: $100.00

**Count Seven**

Violation: 18 U.S.C. § 1956(h)

Penalty: Imprisonment for a term of not more than twenty (20) years, a fine of $500,000 or twice the value involved in the offense, whichever is greater, or both. A term of supervised release of up to five (5) years.

Special Assessment: $100.00